UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR VIEW WEST, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>STEINBERG, HALL & ASSOCIATES, INC., et al.,<br><br>        Defendants. | Case No. 23-cv-04774-SI<br><br>**ORDER DENYING THE STEINBERG DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**<br><br>Re: Dkt. No. 51 |

Before the Court is a motion to disqualify plaintiff's counsel Frederick Page, and by extension his firm and co-counsel, filed by the Steinberg defendants.[1] Dkt. No. 52. Plaintiff opposes. Dkt. No. 52. Pursuant to Civil Local Rule 7-1(b), the Court found this matter appropriate fort resolution without oral argument and VACATED the hearing scheduled for March 29, 2024. For the reasons set forth below, the Court DENIES defendants' motion.

## BACKGROfUND[2]

### I.   The 2013 Lawsuit and Arbitration

On August 30, 2013, Holland & Knight LLP ("H&K")[3] was retained by Clear View West, LLC ("CVW") and Samuel Steinberg ("Steinberg") of Steinberg, Hall & Associates, Inc., dba Home

---

[1] The Steinberg defendants include Samuel Steinberg, Steinberg Hall & Associates, Inc., Chang Steinberg Hall, Inc., and La Costa Shade, Inc.

[2] All facts are drawn from declarations and other documents attached to the parties' briefing.

[3] Frederick Page, who is at the center of this disqualification dispute, was an associate and then partner at H&K from 1997 through November 1, 2023. *See* Dkt. No. 52-2 ("Page Decl.") ¶ 3. In November 2023, after the present lawsuit was filed, he joined his current firm, Bishop Page & Mills PLLC. *See id.*

Improvement Specialists ("HIS"), to represent CVW and HIS in a dispute with CVW's then licensor, Clear View Products Southeast, Inc. ("CVPSE"). Dkt. No. 52-2 ("Page Decl.") ¶ 4; Dkt. No. 52-1 ("Lezotte Decl.") ¶ 7. Steinberg is the primary owner and President of HIS as well as Chang Steinberg Hall, Inc. and La Costa Shade, Inc. Dkt. No. 51-2 ("Steinberg Decl.") ¶ 2. HIS served as a distributor of CVW from 2010 to 2023. *Id.* ¶ 3, Ex. 5. HIS and Chang Steinberg Hall, Inc. also provided consulting services to CVW "which consisted of developing its business model, marketing, and sales strategies, financial projections, and operational plans." Steinberg Decl. ¶ 4. HIS and Steinberg "for years [] set up and maintained websites for CVW, its distributors and its subdistributors." Steinberg Decl. Ex. 5 at 4.

The 2013 dispute involved a lawsuit filed by CVPSE and Clear View MotionScreen, Inc. ("CVMS") on August 19, 2013 against HIS in the Middle District of Florida (the "2013 Lawsuit"). Page Decl. ¶ 9; Lezotte Decl. ¶ 7; Steinberg Decl. ¶ 6. It also involved a 2013 arbitration between CVW and CVPSE "involving mutual allegations that each party and its distributors were selling CLEAR VIEW retractable screens into the exclusive territory of the other party." Page Decl. ¶ 9; *see also* Lezotte Decl. ¶ 7.[4]

H&K agreed to handle the lawsuit and arbitration as a joint representation. Page Decl. ¶ 6; *see also* Steinberg Decl. ¶ 7. Page was the lead counsel at H&K for the lawsuit and arbitration. Page Decl. ¶ 8. The joint representation engagement letter was signed by Andrew Lezotte, president and majority owner of CVW, and Steinberg of HIS. Page Decl. Exs. A, B.[5] It states that H&K's engagement will involve representing the interests of HIS in the lawsuit and CVW's interests in the arbitration. *Id.* at 1. It further states that "as a necessary consequence of this joint representation,

---

[4] At the time, CVW held the rights to sell CLEAR VIEW retractable screens west of the Mississippi River, while its licensor, CVPSE, held the rights east of the Mississippi River for retractable screens and all rights for power screens. HIS (Steinberg's company) was authorized to use the CLEAR VIEW mark with retractable screens, but not power screens. Page Decl. ¶ 8.

[5] The initial joint representation letter was sent on September 26, 2013. *See* Page Decl. Ex. A. It was later learned that the named defendant, The H.I.S. Home Improvement Specialists, Inc., was a fictitious name of Steinberg, Hall & Associates, Inc. *See* Page Decl. ¶ 7. An identical engagement letter (except for the name of Steinberg's company, which was updated), was sent on October 31, 2013. *See id.* Ex. B.

all information you share with H&K in this joint representation will be shared among each other. . . In addition, in the unlikely event of a disagreement among you, the attorney-client privilege will not protect the information you share with us from being disclosed to the other." *Id.* at 1-2. It further notes that if "any dispute between HIS and CVW relative to the two related matters" arises, "we obviously will not be able to represent either of you against the other." *Id.* at 2. In consenting to the joint representation, CVW and HIS waived their right "to object to any conflict of interest associated with the joint representation." *Id.* The letter also specified that H&K would open two separate billing files for the matters and record time separately. *Id.* Invoices for the arbitration matter were to be sent to CVW and paid by CVW, while invoices from the HIS lawsuit would be sent to HIS and paid jointly by HIS and CVW. *Id.*

According to Lezotte, the lawsuit and arbitration "were heavily intertwined and both CVW and HIS wanted H&K to represent them jointly to keep costs down." Lezotte Decl. ¶ 8. Lezotte declares that during the course of the 2013 matters, he often wanted Steinberg to be on calls with Page about the arbitration given Steinberg's role with CVW. *Id.* ¶ 10.[6] Steinberg declares that throughout the duration of the joint representation, attorney-client privileged information was discussed between HIS, CVW, and Page. Steinberg Decl. ¶ 14. "[I]n order for Mr. Page to thoroughly evaluate the matters and the claims made against HIS," Steinberg "informed Mr. Page of HIS and [CVW]'s confidential and propriety business structure, practices, and procedures" as well as "marketing and sales strategies, which included the use of Clear View marks." *Id.* ¶ 15.

The 2013 Lawsuit filed by CVPSE and CVMS against HIS was an action for trademark infringement and unfair competition. Dkt. No. 51-1 ("Flynn Decl.") Ex. 7 ("2013 Complaint") ¶ 1. The complaint alleges that CVPSE and CVMS had not provided HIS with permission to use the CLEARVIEW MOTORSCREEN trademark, but HIS nonetheless marketed, distributed, and sold products using that trademark or marks confusingly similar to it. *Id.* ¶ 17. The plaintiffs alleged that HIS infringed on the CLEARVIEW MOTORSCREEN trademark by promoting products on its

---

[6] Steinberg acted as an "officer" of CVW for many years and, starting in 2016, held the title "Director of Sales." Lezotte Decl. ¶ 3. Steinberg terminated his relationship with CVW on June 6, 2023. *Id.* ¶ 5; Steinberg Decl. ¶ 21.

1  websites as if they were manufactured and distributed by plaintiffs when they were not. *Id.* ¶ 18. HIS's unauthorized use of the CLEARVIEW MOTORSCREEN trademark or marks confusingly similar to it allegedly had the effect of misleading consumers to believe HIS was affiliated with the plaintiffs, was an authorized distributor of its products, and/or was otherwise selling its products. *Id.* ¶ 19. The complaint further alleges that HIS enabled other entities to improperly use the CLEARVIEW MOTIONSCREEN trademark through its selling of products through dealers located across the country. *See id.* ¶¶ 23-27. The requested relief included enjoining HIS from using the CLEAR VIEW MOTIONSCREEN trademark or any confusingly similar marks in connection with marketing, selling, or distributing its products. *Id.* at 11-12.

The 2013 Lawsuit was dismissed with prejudice in April 2014 as part of the settlement of the 2013 arbitration. Page Decl. ¶ 11. The civil docket reflects that a notice of voluntary dismissal with prejudice was filed on April 22, 2014. Flynn Decl. Ex. 6. Prior to this, the docket reflects that the defendant filed a motion to dismiss, both parties filed initial disclosures, and the defendant filed their first interrogatories and request for production. *Id.*[7] Page's representation of HIS concluded after the settlement. Page Decl. ¶ 11; Steinberg Decl. ¶ 16. "[T]he settlement agreement had provisions limiting the use of 'CLEAR VIEW' to retractable screens for CVW and specific provisions requiring both sides' distributor websites to make clear the location of the involved distributor and not intentionally target customers in the other side's exclusive territory." Page Decl. ¶ 13. Page spent 37.7 billable hours on the 2013 Lawsuit and H&K expended 107.2 billable hours. Steinberg Decl. ¶¶ 17-18.

**II.   After the 2013 Lawsuit and Arbitration**

From 2014 to the present, Page has continued to represent CVW. Page Decl. ¶ 14; Steinberg Decl. Ex. 5 at 3. He continued to represent CVW in the arbitration and in later disputes relating to the settlement of the arbitration. Steinberg Decl. Ex. 5 at 3. In 2015, he represented CVW in another

---

[7] Page notes that he and his firm moved to dismiss the complaint against HIS on personal jurisdiction grounds. Steinberg Decl. Ex. 5 at 3.

1    lawsuit with CVPSE, which settled in 2016 with CVW acquiring CVPSE's rights to the entire
2    CLEAR VIEW product line. *Id.*; Lezotte Decl. ¶ 12. According to Lezotte, Steinberg was aware
3    of this lawsuit and settlement as a representative of CVW. Lezotte Decl. ¶ 12. CVW also "continued
4    to work with Mr. Page and H&K on various smaller trademark matters as well as potential
5    transactional matters." Lezotte Decl. ¶ 14; Steinberg Decl. Ex. 5 at 3. "Mr. Steinberg would have
6    been aware of some but not all of these ongoing matters, and even requested me at times to have
7    Mr. Page write letters for CVW to people infringing on the CLEAR VIEW marks." Lezotte Decl.
8    ¶ 14. Page asserts that at "no time over the last 10+ years has Mr. Steinberg or HIS ever objected
9    to our ongoing representation of CVW." Steinberg Decl. Ex. 5 at 3.

10   In June 2023, CVW contacted Page about Steinberg's actions. Page Decl. ¶ 16; Lezotte
11   Decl. ¶ 15. On June 20, 2023, Page sent cease and desist letters regarding CVW's intellectual
12   property rights to the parties involved, including Steinberg of HIS. *See* Page Decl. Exs. C, D, E. In
13   the letters, CVW demands the recipients "cease and desist from any and all further uses of the marks
14   'CLEAR VIEW,' 'CLEARVIEW RETRACTABLE SCREENS,' 'CLEARVIEW
15   MOTIONSCREEN,' the ClearView logo, CVW's marketing materials, photographs of CVW's
16   products, any domain names containing 'CLEARVIEW' as part of the URL, any email containing
17   'CLEARVIEW' as part of the email address, and any other uses of marks or materials confusingly
18   similar to any of the foregoing." *Id.* at 5.

20   **III.   The Present Lawsuit**
21   On July 19, 2023, Jeffrey Byer of Sandler, Lasry, et al.[8] sent a letter to Page on behalf of
22   HIS asserting that a conflict of interest exists that disqualifies H&K from its representation of CVW.
23   *See* Steinberg Decl. Ex. 4.[9] The letter lists specific reasons defendants believe Page should be
24   disqualified. *See id.* Page responded by letter on July 26, 2023. *See id.* Ex. 5. Neither Page nor

---

[8] Byer served as counsel for HIS prior to Gordon Rees Scully Mansukhani, LLP's current representation. Dkt. No. 51 at 7 n.3.

[9] Steinberg declares that he was not informed by Page or H&K of Page's new position with Bishop Page & Mills PLLC. Steinberg Decl. ¶ 31.

his current firm contacted Steinberg "to obtain informed written consent to represent Clear View West in this action" and Steinberg does not consent to Page's present representation of CVW. *Id.* ¶¶ 32-33.

The present lawsuit was filed on September 15, 2023 and alleges trademark infringement, trade secret misappropriation, unfair competition and false designation of origin, breach of contract, breach of fiduciary duty, fraud, and other California state law claims. Dkt. No. 1 ("Compl."). The complaint alleges that defendants intentionally infringed CVW's CLEARVIEW related trademarks and service marks for retractable window and door screens. *Id.* ¶ 2. In 2010, after CVW acquired the rights to certain of the CLEARVIEW MARKS west of the Mississippi River, CVW's owner, Lezotte, granted Steinberg and his company, HIS, the right to be the exclusive distributor of CVW products in Southern California. *Id.* ¶ 3. In exchange, HIS and Steinberg performed services for CVW, including creating and maintaining CLEARVIEW related websites and running ad campaigns. *Id.* Steinberg or his companies would invoice CVW for those services and CVW would pay for the services plus additional amounts to compensate Steinberg. *Id.*

In 2016, CVW paid "substantial sums" to gain all rights to the CLEARVIEW MARKS nationwide and to acquire the East Coast distributor network of the prior owner of CLEARVIEW MARKS. *Id.* ¶ 5. Subsequently, Steinberg was formally appointed Director of Sales of CVW and "entrusted with overseeing CVW's nationwide distributor relationships." *Id.* ¶ 6. He continued to maintain the CLEARVIEW websites and run ad campaigns. *Id.* Through this role Steinberg had access to all web usage data for every CVW distributor, to sales calls and inquiries made to distributors, and access to data distributor responses to customer inquiries. *Id.* ¶ 8. Steinberg was compensated by CVW differently from other distributors, was granted access to internal confidential information, and was permitted to maintain his exclusive territory in Southern California. *Id.*

The complaint alleges that, in or around 2021 and continuing into 2023, Steinberg, while still purporting to serve as CVW's Director of Sales, "schemed" to "(a) create a knock-off product of CVW's retractable screen, (b) rebrand the existing motorized screen from CLEARVIEW to a

new brand,[10] (c) use his knowledge of CVW's Confidential Information to recruit CVW's top existing distributors . . . to terminate or diminish their relationship with CVW without any notice or warning and only sell [Mr. Steinberg's] new knock-off products going forward, and (d) cut CVW out of the profits from any sales of the rebranded motorized screens by selling direct to the distributors." *Id.* ¶ 11. Steinberg allegedly had each CVW distributor that he recruited sign a non-disclosure agreement. *Id.* ¶ 12. In or before early 2023, Steinberg began distributing APOLLO screens through CVW's distributors without notice to CVW. *Id.* ¶ 13. On June 6, 2023, Steinberg "terminated his relationship with CVW, informed CVW he had launched a competing line of screens, and notified CVW he was taking CVW's top distributors with him." *Id.* ¶ 14.

After terminating the relationship, Steinberg allegedly cut off CLEARVIEW branded websites and associated phone numbers, cut off call monitoring and ad campaigns of CVW and all its remaining distributors, and rerouted many historical CLEARVIEW website phone numbers to "APOLLO SCREENS" offices, causing confusion among CVW and its distributors' customers and employees. *Id.* ¶ 15. He also allegedly redirected existing CLEARVIEW websites to point to new APOLLO websites "so a consumer looking for CLEARVIEW would automatically go to an APOLLO website without any explanation." *Id.* ¶ 17. HIS and former CVW distributors also allegedly continued to use the CLEARVIEW MARKS and logos to mislead and deceive customers. *Id.* ¶¶ 16, 18.

**LEGAL STANDARD**

The decision whether to disqualify counsel is committed to the discretion of the district court. *See Gas-A-Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1325 (9th Cir. 1976). Pursuant to Local Rule 11, every attorney before this Court must "comply with the standards of professional conduct required of the members of the State Bar of California." N.D. Cal. Civ. Local Rule 11–

---

[10] In 2021 Steinberg proposed adding a motorized retractable screen to the CVW product line that Steinberg had developed. *Id.* ¶ 9. CVW agreed to launch Steinberg's motorized screens through CVW's network under the agreement that CVW would be compensated 20% for the sales to distributors. *Id.* ¶ 10. CVW also permitted Steinberg to brand the motorized screens as CLEARVIEW SCREENS. *Id.*

1    4(a)(1). Accordingly, the Court applies California law in determining matters of disqualification.

2    *See In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).

3    Disqualification motions "should be subjected to particularly strict judicial scrutiny." *Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1050 (9th Cir. 1985). "Generally, outright disqualification is disfavored because it may drastically affect several important interests—a client's right to choose counsel, an attorney's interest in representing a client, the financial burden on a client who must replace disqualified counsel, and the possibility that the disqualification motion is merely pursued for tactical reasons." *QuickLogic Corp. v. Konda Tech., Inc.*, 618 F.Supp.3d 873, 880 (N.D. Cal. 2022) (citation omitted). On the other hand, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and in the integrity of the bar." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc,*, 20 Cal. 4th 1135, 1145 (1999).

## DISCUSSION

Defendants argue that Page, his current firm, and local counsel should be disqualified due to a conflict of interest under California's substantial relationship test. Dkt. No. 51 at 10. Plaintiff contends that as a result of the joint representation, "there are no possible confidential, attorney-client communications between Mr. Page and his former client, HIS, that may not be shared with Plaintiff." Dkt. No. 52 at 16.

Under California Rule of Professional Conduct 1.9(a):

> "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."

Cal. Rule of Prof'l Conduct 1.9(a) (effective November 1, 2018). The Comments to Rule 1.9 specify that:

> [1] After termination of a lawyer-client relationship, the lawyer owes two duties to a former client. The lawyer may not (i) do anything that will injuriously affect the former client in any matter in which the lawyer represented the former client, or (ii) at any time use against the former client knowledge or information acquired by virtue of the previous relationship.

8

[3] Two matters are "the same or substantially related" for purposes of this rule if they involve a substantial risk of a violation of one of the two duties to a former client described above in Comment [1]. For example, this will occur: (i) if the matters involve the same transaction or legal dispute or other work performed by the lawyer for the former client; or (ii) if the lawyer normally would have obtained information in the prior representation that is protected by Business and Professions Code section 6068, subdivision (e) and rule 1.6, and the lawyer would be expected to use or disclose that information in the subsequent representation because it is material to the subsequent representation.

"Where the potential conflict is one that arises from the successive representation of clients with potentially adverse interests, the courts have recognized that the chief fiduciary value jeopardized is that of client confidentiality." *Flatt v. Superior Court*, 9 Cal. 4th 275, 283 (1994). "Thus, where a former client seeks to have a previous attorney disqualified from serving as counsel to a successive client in litigation adverse to the interests of the first client," the "substantial relationship" test is the governing test. *Id.* The "substantial relationship" test "mediates between two interests that are in tension in such a context—the freedom of the subsequent client to counsel of choice, on the one hand, and the interest of the former client in ensuring the permanent confidentiality of matters disclosed to the attorney in the course of the prior representation, on the other." *Id.* "Where the requisite substantial relationship between the subjects of the prior and current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation . . . is *presumed* and disqualification of the attorney's representation of the second client is mandatory." *Id.* (emphasis in original); *see also Adams v. Aerojet-General Corp.*, 86 Cal. App. 4th 1324, 1331 (2001) ("When a substantial relationship has been shown to exist between the former representation and the current representation, and when it appears by virtue of the nature of the former representation or the relationship of the attorney to his former client confidential information material to the current dispute would normally have been imparted to the attorney . . . the attorney's knowledge of confidential information is presumed") (citations omitted).

Defendants focus on the fact that there was a direct and personal relationship between Page and HIS during the 2013 Lawsuit and that this relationship "clearly touched on material factual and legal issues related to the present litigation." Dkt. No. 51 at 13. Defendants argue that based on the similarities between the 2013 Lawsuit and the present action, including the similarities in the legal

9

1  questions involved and the nature and extent of Page's involvement with the cases, Page is
2  conclusively presumed to possess confidential information. *Id.* at 14.  The Court agrees that Page
3  is presumed to possess confidential information related to the 2013 Lawsuit and arbitration.
4  However, the threshold issue, which defendants do not address, is if and how the substantial
5  relationship test applies in the first instance in the context of a former joint representation, given the
6  concerns about confidentiality that underly Rule 1.9 and the cited case law.

7        Defendants assert that "whether there is any confidentiality between Clear View West and
8  HIS is irrelevant, and overlooks the essence that the information would still be confidential as to
9  other defendants in this case," specifically the Craig Roberts defendants (Craig Roberts and Craig
10  Roberts Home Improvements, Inc.), who were not parties to the 2013 Lawsuit.  Dkt. No. 51 at 15.
11  Page did not acquire any confidential information about the Roberts defendants in 2013; at issue is
12  whether Page should be disqualified because he acquired confidential information about HIS.
13  Defendants do not explain how the existence of the Roberts defendants in the present case is relevant
14  to the issue to be decided.  The Court also finds the 2013 joint representation agreement highly
15  relevant to the disqualification determination.

16        Defendants cite the "relevant law" portion of *Cnty. of San Francisco v. Cobra Sols., Inc.*, 38
17  Cal. 4th 839 (2006) for guidance on what constitutes a substantial relationship between successive
18  representations.  The paragraph defendants draw from starts out by stating that the "enduring duty
19  to preserve client confidences precludes an attorney from later agreeing to represent an adversary
20  of the attorney's former client unless the former client provides an 'informed written consent'
21  waiving the conflict." *Id.* at 847.  It then explains that "[t]o determine whether there is a substantial
22  relationship between successive representations, a court must first determine whether the attorney
23  had a direct professional relationship with the former client in which the attorney personally
24  provided legal advice and services on a legal issue that is closely related to the legal issue in the
25  present representation." *Id.*  If the former representation involved such a direct relationship, the
26  attorney is presumed to possess confidential information "if the subject of the prior representation
27  put the attorney in a position in which confidences material to the current representation would
28  normally have been imparted to counsel." *Id.*  The case does not address a joint representation fact

10

scenario and the Court does not find that its recitation of relevant law provides guidance here.[11]

Defendants next cite *Jessen v. Hartford Casualty Ins. Co.*, 111 Cal. App. 4th 698 (2003). In this case, the appellant moved to disqualify the law firm representing the respondent because the respondent's counsel of record was previously an attorney with a firm that had represented the appellant in numerous matters. *Id.* at 702. The case articulates a standard for when successive representations will be "substantially related." *See id.* at 713. The case also extensively discusses the substantial relationship test and its origins, focusing on the goal of protecting the disclosure of confidential information by former clients. *See id.* at 705-711. This case likewise does not explain how the substantial relationship test applies in the context of a former joint representation.

In their reply, defendants rely heavily on *Monster Energy Company v. Vital Pharmaceuticals, Inc.*, No. EDCV-18-1882 JGB (SHKx), 2018 WL 6431870 (C.D. Cal. Nov. 30, 2018), a case they cited in their motion in relation to their argument that Page's disqualification extends vicariously to his law firm and to Lewis Anten. In 2008, Hansen Beverage Company, which subsequently changed its name to Monster Energy Company, filed a lawsuit against Vital Pharmaceuticals, Inc. ("VPX") alleging false advertising under California law, violations of the Lanham Act, and trade libel. *Id.* at *3. Attorney Miles had represented VPX in this 2008 lawsuit and in 2018 was representing Monster in a lawsuit filed against VPX. *See id.* The 2008 and 2018 lawsuits involved the same parties, the same subject matter, and the same legal claims, and in both lawsuits Hansen/Monster's claims were "largely grounded in allegations that VPX made untruthful statements about its own energy drinks in order to boost" its relative market position. *Id.* The plaintiff argued that the lawsuits were not substantially related because the complaints involved different claims about different products. *Id.* The court responded that "[w]hile it appears to be undisputed that the product BANG did not yet exist during the period that Miles represented VPX,

---

[11] This case considered the specific question of "whether the judicially created rule requiring vicarious disqualification of an entire law firm should apply to a government law office when the head of that office has a conflict because that attorney previously, while in private practice, represented a client that is now being sued by the government entity in a matter substantially related to the attorney's prior representation." *Id.* at 848. After its recitation of "relevant law," its analysis focused on this question.

11

Plaintiff paints with too fine a brush in distinguishing the basis of the legal claims in these lawsuits." *Id.* The court went on to explain that a "substantial relationship . . . does not require 'an exact match between the facts and issues involved in the two representations.'" *Id.* (citation omitted). While this case provides an example of the application of the substantial relationship test, it does not aid the Court in determining whether the substantial relationship test is controlling here in the first instance.

Plaintiffs point the Court to *Christensen v. U.S. Dist. Court for Cent. Dist. of California*, 844 F.2d 694, 697-699 (9th Cir. 1988).[12] This case was commenced by the Federal Savings and Loan Insurance Corporation ("FSLIC") as a result of the failure of Beverly Hills Savings and Loan Association ("BHSL"). *Id.* at 695. To summarize complicated facts, the Wyman law firm "originally represented a management group that took over a corporation that later went bankrupt and then attempted to continue representation of their original client in litigation with the corporation." *Id.* at 698. Wyman had appeared as counsel for the Amir group and Christensen; the Amir group was a former management group of BHSL and Christensen was a senior partner at

---

[12] *Christensen* was decided before the current Rule 1.9 was adopted. Rule 4-101, in place at the time, states: "A member of the State Bar shall not accept employment adverse to a client or former client, without the informed and written consent of the client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client." California Rules of Professional Conduct Rule 4-101 (1986). Defendants argue in their reply that *Christensen* is no longer good law because it was decided before the current Rule 1.9 was adopted. Dkt. No. 53 at 4-5. However, nearly all the cases upon which defendants rely were also decided before the current Rule 1.9 was adopted. *Monster Energy* was decided in 2018, after the adoption of the current Rule 1.9, but the cases it cites in its legal standards section about successive representation and the cases it relies on to reach its decision also predate the current version of the rule. The same is true of *Sierra v. Costco Wholesale Corp.*, 630 F. Supp. 3d 1199 (N.D. Cal. 2022), a straightforward disqualification case where an attorney at the law firm representing the plaintiff against Costo had previously represented Costo in numerous cases while employed with another firm.

Defendants cite a footnote in *Monster* for their assertion that Rule 1.9 is more protective of former clients than Rule 3-310, which it replaced. *See* Dkt. No. 53 at 5. However, defendants misrepresent this footnote. The court in *Monster* explained that although Rule 1.9 is "at first glance more protective of clients than Rule 3-310 . . . as it eliminates the requirement that the lawyer 'has obtained confidential information material to the employment' in the course of representing the former client in a substantially related case for a conflict to arise," the "commentary provided by the Commission for the Revision of the Rules of Professional Conduct effectively reincorporates this requirement . . . " *Monster Energy*, 2018 WL 6431870 at *2 n.1. The footnote goes on to explain that "in light of this, and lacking further guidance from the California courts due the recentness of the rule change, the Court sees no material difference in the new rule as applied to this dispute and applies established precedent." *Id.* Defendants have not provided the Court with any cases postdating the 2018 version of Rule 1.9 that support its contention that the 2018 version materially changed the rule such that past case law should not be applied.

1   Wyman who was later added to the BHSL Board. *Id.* at 696. FSLIC moved to disqualify Wyman
2   because Wyman had previously represented BHSL "and was therefore barred from representing
3   another client in a position adverse to BHSL in substantially related litigation." *Id.* Christensen
4   argued that the substantial relationship test was inapplicable because Wyman could not have
5   received information from BHSL that was not also known to Christensen. *Id.* at 698. Considering
6   the unique relationships of the parties and entities, the court agreed, adopting a rule from the Second
7   Circuit that "the substantial relationship test is not implicated unless the attorney was in a position
8   where he could have received information that his former client might reasonably have assumed the
9   attorney would withhold from his present client." *Id.* (citing *Allegaert v. Perot*, 565 F.2d 246, 250
10  (2d Cir.1977)). The court reasoned that BHSL necessarily knew that any information it gave to
11  Wyman would be conveyed to Christensen as a BHSL director and senior partner in the Wyman
12  law firm. *Id.*

13  *Christensen* involves a fact scenario closer to the unique joint representation fact scenario at
14  issue here, and the Court finds its reasoning persuasive. Under the 2013 joint representation
15  agreement, CVW and HIS agreed that all information shared with their counsel (Page) in the joint
16  representation would be shared among each other and that the attorney-client privilege would not
17  protect the information one shared from being disclosed to the other. HIS thus had no reason to
18  believe that information it shared with Page during the 2013 matters would be withheld from CVW.
19  After the settlement that ended the 2013 Lawsuit, Page ceased representation of HIS; the only
20  confidential communications Page had with HIS were during the joint representation.

21  A California district court applied *Christensen* in *Tivoli, LLC v. Targetti Sankey S. P. A.*, No.
22  SACV 14-1285-DOC (JCGx), 2015 WL 12669882 (C.D. Cal. 2015). There, the attorney whose
23  disqualification was sought represented a management group (Targetti Poulsen) that managed a
24  company (Tivoli) that was later acquired by a third party and the attorney was attempting to continue
25  to represent their original client in litigation with the acquired company. *Id.* at *5. The court
26  explained that Tivoli knew that information given to the attorney went through Birmingham, who
27  worked on behalf of Targetti Poulsen, and to Targetti Poulsen itself. *Id.* Thus, even if the attorney
28  was disqualified, Birmingham and Targetti Poulsen were still in possession of all confidential

13

information that Tivoli could have passed to the attorney, and there was no expectation on Tivoli's part that its confidences would not have been conveyed to Targetti Poulsen or Birmingham. *Id.* Here, even if Page were disqualified, CVW would still be in possession of the confidential information it learned about HIS during the 2013 joint representation (and presumably that it learned from Steinberg during the time he was affiliated with CVW).

Plaintiff alerts the Court of a California state court case that declined to follow *Allegaert* and *Christensen* on the grounds that it was "unpersuaded under the circumstances of this case that there is a joint client exception to the prohibition against representation adverse to a former client." *Western Continental Operating Co. v. Natural Gas Corp.*, 212 Cal.App.3d 752, 761 (1989). The court in *Western Continental* distinguished *Allegaert* and *Christensen* because the record revealed that the trial court had substantial evidence that the party seeking disqualification had a reasonable expectation of confidentiality with respect to certain disclosures. *Id.* at 762. This distinguishing fact is not present here. The Court agrees with the court in *Western Continental* that it "must be guided by the circumstances of the particular case," and believes that the circumstances of the present case weigh against disqualification. *See id.*[13]

Having carefully considered the parties' briefing and all the cases cited therein, the Court finds that the balance of interests here weighs against disqualification and that disqualification is not appropriate given the unique facts of this case. Confidentiality concerns underlie Rule 1.9 and are at the heart of the above referenced case law. Confidentiality is not at issue here where Page jointly represented CVW and HIS for a limited period in 2013 under a joint representation agreement, and then continued to represent CVW for the next 10 years while Steinberg, primary owner and president of HIS, worked with CVW and was later appointed Director of Sales at CVW.

---

[13] Plaintiff also cites *Fiduciary Tr. Internat. of California v. Superior Ct.*, 218 Cal. App. 4th 465, 484-85 (2013) as an example of a case where disqualification was found in the context of a prior joint representation. There, a law firm had previously represented two individuals in estate planning matters, and was now asserting, on behalf of one of those individual's representatives, that the documents the law firm had prepared during the joint representation should be interpreted in a manner that would substantially reduce the value of the other individual's estate or trust. *Id.* at 485. The court also extensively discussed its holding that California Evidence Code 962 (which sets forth a joint client exception to the evidentiary privilege accorded to attorney-client communications) does not establish a blanket exception to the ethical limitations on adverse, successive representations. *See id.* at 482-86. The Court does not find that this case dispositive here.

Additionally, the Court finds it significant that Page has served as CVW's counsel since the conclusion of the 2013 matters to the present, including during the time when Steinberg was Director of Sales at CVW. *See UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1065 (C.D. Cal. 2007) ("Courts . . . have an interest in preserving the continuity of the lawyer-client relationship; otherwise, if such relationships were easily disrupted, complicated cases such as this would take even longer to resolve, [and] the costs of litigation would be even higher).")

Because the Court has determined that Page is not disqualified based on his 2013 joint representation of HIS, the Court need not reach the issue of vicarious disqualification of Page's law firm and his co-counsel Lewis Anten.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendants' motion to disqualify plaintiff's counsel.

**IT IS SO ORDERED**.

Dated: March 29, 2024

SUSAN ILLSTON
United States District Judge

15