UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLEAR VIEW WEST, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>STEINBERG, HALL & ASSOCIATES, INC., et al.,<br><br>　　　　Defendants. | Case No. 23-cv-04774-SI<br><br>**ORDER DENYING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Dkt. No. 118 |

Before the Court is a motion for judgment on the pleadings, filed by the Steinberg defendants.[1] The present lawsuit filed by plaintiff Clear View West, LLC ("CVW") alleges trademark infringement, trade secret misappropriation, unfair competition and false designation of origin, breach of contract, breach of fiduciary duty, fraud, and other California state law claims. The Court held a hearing on January 9, 2026. For the reasons set forth below, the Court DENIES defendants' motion.

**BACKGROUND**

**I.    Factual Background**

Plaintiff Clear View West, LLC ("CVW") develops retractable window and door screens. Dkt. No. 93 ("FAC") ¶ 1. The complaint alleges that defendants intentionally infringed CVW's trademarks and service marks for retractable window and door screens. *Id.* ¶ 2. In 2010, after CVW

---

[1] The Court uses the term "Steinberg defendants" to refer to all defendants except Craig Roberts ("Roberts") and Craig Roberts Home Improvements, Inc. ("CRHI"). The Steinberg defendants include Samuel Steinberg ("Steinberg"), Steinberg Hall & Associates, Inc. dba Home Improvement Specialists ("HIS"), Chang Steinberg Hall, Inc. ("CSH"), La Costa Shade, Inc. ("LCS"), and Three Woods DMP Enterprises Inc. dba Apollo Screen ("THREE WOODS").

acquired the rights to certain of the CLEARVIEW MARKS[2] west of the Mississippi River, CVW's owner, Lezotte, granted Steinberg and his company, Home Improvement Specialists, Inc. ("HIS"), the right to be the exclusive distributor of CVW products in Southern California. *Id.* ¶ 3. In exchange, HIS and Steinberg performed services for CVW, including creating and maintaining CLEARVIEW related websites and running advertising campaigns. *Id.* Steinberg or his companies would invoice CVW for those services and CVW would pay for the services plus additional amounts to compensate Steinberg. *Id.*

In 2016, CVW paid "substantial sums" to gain all rights to the CLEARVIEW MARKS nationwide and to acquire the East Coast distributor network of the prior owner of CLEARVIEW MARKS. *Id.* ¶ 9. Subsequently, Steinberg was formally appointed Director of Sales of CVW and "entrusted with overseeing CVW's nationwide distributor relationships and with growing sales." *Id.* ¶ 10. He continued to maintain the CLEARVIEW websites and run advertising campaigns. *Id.* Through this role Steinberg had access to all web usage data for every CVW distributor, to sales calls and inquiries made to distributors, and to data on distributor responses to customer inquiries. *Id.* ¶ 12. Steinberg was compensated by CVW differently from other distributors, was granted access to internal confidential information, and was permitted to maintain his exclusive territory in Southern California. *Id.*

In or around 2021, and continuing into 2023, Steinberg, while still purporting to serve as CVW's Director of Sales, "schemed" to "(a) create a knock-off product of CVW's retractable screen, (b) rebrand the existing motorized screen from CLEARVIEW to a new brand,[3] (c) use his knowledge of CVW's Confidential Information to recruit CVW's top existing distributors . . . to terminate or diminish their relationship with CVW without any notice or warning and only sell [Mr.

---

[2] The term "CLEARVIEW MARKS' includes CVW's rights to the marks CLEARVIEW RETRACTABLE SCREENS, CLEARVIEW SCREENS, CLEARVIEW POWER SCREENS, CLEARVIEW or CLEAR VIEW, and a yellow and blue CLEARVIEW logo. FAC ¶ 2.

[3] In 2021 Steinberg proposed adding a motorized retractable screen to the CVW product line that Steinberg had developed. *Id.* ¶ 13. CVW agreed to launch Steinberg's motorized screens through CVW's network under the agreement that CVW would be compensated 20% for the sales to distributors. *Id.* ¶ 14. CVW also permitted Steinberg to brand the motorized screens as CLEARVIEW SCREENS. *Id.*

Steinberg's] new knock-off products going forward, and (d) cut CVW out of the profits from any sales of the rebranded motorized screens by selling direct to the distributors." *Id.* ¶ 15. Steinberg allegedly had each CVW distributor that he recruited sign a non-disclosure agreement to keep his efforts secret from CVW. *Id.* ¶ 16. In or before early 2023, Steinberg began distributing APOLLO screens through CVW's distributors without notice to CVW. *Id.* ¶ 17. On June 6, 2023, Steinberg "terminated his relationship with CVW, informed CVW he had launched a competing line of screens, and notified CVW he was taking CVW's top distributors with him." *Id.* ¶ 20.

After terminating the relationship, Steinberg allegedly cut off CLEARVIEW branded websites and associated phone numbers, cut off call monitoring and advertising campaigns of CVW and all its remaining distributors, and rerouted many historical CLEARVIEW website phone numbers to "APOLLO SCREENS" offices, causing confusion among CVW and its distributors' customers and employees. *Id.* ¶ 21. He also allegedly redirected existing CLEARVIEW websites to point to new APOLLO websites "so a consumer looking for CLEARVIEW would automatically go to an APOLLO website without any explanation." *Id.* ¶ 23. Steinberg and his companies, acting through former CVW distributors, also allegedly continued to use the CLEARVIEW MARKS and logos to mislead and deceive customers. *Id.* ¶¶ 22, 24.

## II. Procedural Background

Plaintiff filed its original complaint in this action on September 15, 2023. Dkt. No. 1 ("Compl."). Discovery began in late 2023.[4] On April 30, 2025, plaintiff requested, and the Court subsequently granted, leave to file a first amended complaint to add a defendant entity allegedly owned by defendant Steinberg (THREE WOODS), to "clarify and support original allegations," and to "add an important alternative basis for infringement just learned of." Dkt. Nos. 85, 91. Plaintiff filed its amended complaint on May 29, 2025. Dkt. No. 93 ("FAC").

---

[4] Plaintiff moved for appointment of a Special Master for discovery with agreement from defendants on February 27, 2025. Dkt. No. 75. On April 4, 2025, the Court ordered the appointment of the Hon. Elizabeth D. Laporte (Ret.) as the Special Master in this matter. Dkt. No. 83. The parties began meeting with the Special Master on August 15, 2025. Dkt. No. 110.

1    The FAC lists eleven counts against the Steinberg defendants[5]: (I) Trademark Infringement under 15 U.S.C. § 1114; (II) Unfair Competition and False Designation of Origin under 15 U.S.C. §1125(A); (III) Common Law Trademark Infringement; (IV) Unfair Competition under Cal. Bus. Prof. Code. §§17200, *et seq*.; (V) Common Law Unfair Competition; (VI) Breach of Contract; (VII) Breach of Fiduciary Duties; (VIII) Fraud; (IX) Misappropriation of Trade Secrets under 18 U.S.C. §§1836, *et seq*. and/or Cal. Civ. Code § 3426; (X) Breach of Confidence; and (XI) Interference with Prospective Economic Relationships. *Id.* ¶¶ 44-139. Plaintiff seeks injunctive relief, disgorgement of profits, and damages. *Id.* ¶ 27.

On July 16, 2025, the Steinberg defendants filed a motion to dismiss, which the Court denied as untimely. Dkt. Nos. 104, 105. Steinberg defendants filed an amended answer on August 13, 2025. Dkt. Nos. 106, 107. The Steinberg defendants filed the present motion for judgment on the pleadings on November 14, 2025. Dkt. No. 118. Plaintiff responded, and Steinberg defendants replied. Dkt. Nos. 126, 127.

**LEGAL STANDARD**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A Rule 12(c) motion for judgment on the pleadings is "functionally identical" to a Rule 12(b)(6) motion to dismiss and "the same standard of review applies to motions brought under either rule." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (internal quotation marks and citations omitted). "[U]nder both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal quotation marks and citation omitted). To survive either a Rule 12(b)(6) motion or a Rule 12(c) motion, the plaintiff must allege

---

[5] Plaintiff brings Counts I -V against all defendants and Counts VI-XI against only the Steinberg defendants.

"enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Procedural Issues

Plaintiff raises two procedural issues with the Steinberg defendants' motion for judgment on the pleadings, which the Court addresses at the outset. Opp'n at 11.

#### A. Repetitive Rule 12(b)(6) Motion

Plaintiff argues Steinberg defendants' motion should be denied as a successive motion to dismiss under Rule 12(g). Opp'n at 11. Steinberg defendants contend that the present motion is not "a second bite at the apple," as plaintiff would have it, because the Court dismissed their earlier 12(b)(6) motion to dismiss as untimely without deciding the merits. Reply at 1.

Under Federal Rule of Civil Procedure 12(g) a party that makes a Rule 12 motion "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. Proc. 12(g)(2). Here, plaintiff does not raise previously available defenses or objections *omitted* from its motion to dismiss, rather it recycles its earlier motion wholesale. The present motion repeats identical arguments in identical terms that

appear to be copy-pasted from the prior motion. *Compare* Mot. *with* Dkt. No. 104. These arguments have not yet been addressed by the Court, as the Court denied Steinberg defendants' motion to dismiss as untimely without wading into the merits. Dkt. No. 105. Nor did the Court's order bar Steinberg defendants' from filing a Rule 12(c) motion. *See id.* Therefore, the Court does not find that Rule 12(g) procedurally bars Steinberg defendants' present motion.

### B.     Premature Motion for Summary Judgment

Plaintiff argues that Steinberg defendants' motion should be evaluated as a Rule 56 motion for summary judgment because it relies on matters outside of the pleadings and provides its own "Background Facts" section that contradicts facts in the complaint. Opp'n at 13. Steinberg defendants argue that converting the present motion into a motion for summary judgment is unnecessary because "the facts included in the 'Background Facts' section were not used to support the arguments of the motion." Reply at 3. Steinberg defendants also suggest that the Court should simply ignore "any [contradictory] 'background facts' that were used to support [their] arguments." *Id.*

The Court agrees with plaintiff that Steinberg defendants' alternative "Background Facts" section directly contradicts the facts alleged in the complaint. For instance, the motion denies that Steinberg ever acted as plaintiff's Director of Sales. *Compare* Mot. at 2 ("Mr. Steinberg never served as Plaintiff's Director of Sales.") *with* FAC ¶ 10 ("Steinberg was then formally appointed the Director of Sales for CVW"). The motion also denies that the parties ever had an agreement as to the distribution of motorized screens. *Compare* Mot. at 2. ("There were no contracts, not even a handshake agreement.") *with* FAC ¶ 14 ("CVW agreed to launch Steinberg's motorized screens through CVW's network on the basis that all screens would go through CVW's place of business in Santa Clara County, California, and CVW would be compensated 20% for sales to those distributors"); *see also* FAC ¶¶ 82-85.

Steinberg defendants then rely on these and other contradictory "background facts" to make premature evidentiary arguments in support of their motion for judgment on the pleadings. Indeed, they argue that Counts VII (Breach of Fiduciary Duties), IX (Misappropriation of Trade Secrets), X

6

1  (Breach of Confidence), and XI (Interference with Prospective Economic Relationships) should
2  each be dismissed primarily because they hinge on plaintiff's claim that Steinberg was employed
3  by plaintiff or held the role of Director of Sales. Mot. at 16, 19, 21. They further argue that Counts
4  VI (Breach of Contract) and VIII (Fraud) warrant dismissal because, they contend, there was never
5  any agreement between parties. Mot. at 15, 17. In doing so, defendants rely on their own version
6  of facts. Again, in deciding a Rule 12(c) motion, the court must take all facts plaintiff alleged in the
7  complaint as true. *See Chavez*, 683 F.3d at 1108 (9th Cir. 2012). "[J]udgment on the pleadings is
8  improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding
9  must properly be treated as a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard*
10 *Feinter and Co., Inc*., 895 F.2d 1542, 1550 (9th Cir. 1989).

11 The Court therefore finds that Steinberg defendants' motion sets forth disputed factual issues
12 that cannot be resolved on the pleadings. Steinberg defendants seek what amounts to a premature
13 summary judgment ruling. Both parties acknowledge, and the Court agrees, a motion for summary
14 judgment would be premature, as discovery is ongoing. Opp'n at 11 n. 3 & 13; Reply at 2.

## II. Merits

### A. Alter Ego Theory

Steinberg defendants first argue that each of plaintiff's eleven causes of action should be dismissed for alleging that the Steinberg defendants (Steinberg, HIS, CSH, LCS, and THREE WOODS) are all liable, while failing to plead facts sufficient to invoke the alter ego doctrine. Mot. at 6-7. Plaintiff counters that the complaint adequately pleads all elements of an alter ego claim. Opp'n at 16.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers, and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000). However, under the alter ego doctrine, when the corporate form is used to "perpetuate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose," the courts will disregard the "corporate veil" and "deem the corporation's acts to be those of the persons or organizations actually controlling the

7

corporation." *Id.* Under California law, alter ego liability may be imposed where "(1) there is such a unity of interest and ownership that the individuality, or separateness, of the [defendant] and corporation has ceased; and (2) the facts are such that an adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice." *Whitney v. Arntz*, 320 F. App'x 799, 800 (9th Cir. 2009). Factors for the court to consider include the "commingling of funds and other assets of the two entities, the holding out of by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other." *Sonora Diamond*, 83 Cal. App. 4th at 539.

Steinberg defendants suggest that plaintiff's alter ego claims are too vague to establish the first "unity of interest" prong of alter ego liability, largely because plaintiff does not detail specific instances of commingling funds, undercapitalization, or disregard of corporate formalities. Mot. at 6-7; Reply at 4.

The Court disagrees. Here, the complaint adequately alleges unity of interest, including specific facts regarding the nature of the relationship between the Steinberg defendants: "there is a complete unity of interest and ownership between Steinberg and all four companies" FAC ¶ 5; "Steinberg owns the companies in whole or in significant part, and controls each company as its majority shareholder and/or CEO, CFO and sole Director" *Id.*; "[a]ll of his companies operate out of the same addresses, seemingly do business at times as 'HIS' 'the HIS' or 'Home Improvement Specialists' and/or 'APOLLO' and commingle contracts, obligations and funds" *Id.*; "the parties' ordinary business practice was for CVW to net out amounts invoiced by CSH or LCS against amounts owed to CVW by HIS and to then either accept payment from HIS for the net difference or make payment to LCS or CSH for the net difference." *Id.* ¶ 6; "employees would handle whatever issues came up and never identified themselves as working for any individual company." *Id.* ¶ 7. These allegations of unity of interest are sufficient to survive a 12(c) motion, as the Court could infer that there is a disregard of corporate formalities or a commingling of corporate funds between all the Steinberg entities.

The Steinberg defendants also argue that the second "inequity" prong of alter ego liability is

8

inadequately pled. Mot. at 7. To establish this second prong, plaintiff points to the complaint's allegation that: "[u]nder these circumstances, it would be inequitable to permit Steinberg and the companies to hide behind the corporate separateness doctrine for any purpose or liability when Steinberg operated all the companies as a single enterprise out of a single address, was personally the primary point of contact with CVW with each company, and never clarified what company he was acting for at any one time. Steinberg may not now compartmentalize information he gained in one capacity from the other companies he controlled to avoid liability for his actions attaching to any of the of the companies." FAC ¶ 8.

To establish inequity in the absence of alter ego liability, a plaintiff must plead facts sufficient to demonstrate that "conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form." *Sonora Diamond*, 83 Cal. App. 4th at 540.[6] "The injustice that allows a corporate veil to be pierced is not a general notion of injustice; rather, it is the injustice that results only when corporate separateness is illusory." *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 600 (N.D. Cal. 2012). "Inequitable results flowing from the recognition of the corporate form include the frustration of a meritorious claim, perpetuation of a fraud, and the fraudulent avoidance of personal liability." *Pac. Mar. Freight, Inc. v. Foster*, 2010 WL 3339432, at *7 (S.D. Cal. Aug. 24, 2010).

Here, plaintiff has highlighted potentially inequitable or bad faith conduct on Steinberg defendants' part, namely that Steinberg was using his position with CVW to secretly misappropriate CVW's distributor network through his companies, which were actually all part of a single enterprise. *See, e.g.,* FAC ¶¶ 96-98. Plaintiff alleges that defendant Steinberg and his employees were unclear about which company they were acting on behalf of when communicating with CVW

---

[6] Courts in this circuit have varied on whether a showing of bad faith is required when pleading the second prong of the alter ego test. *P. Bell Tel. Co. v. 88 Connection Corp.*, No. 15-CV-04554-LB, 2016 WL 3257656, at *5 (N.D. Cal. June 14, 2016) (detailing the position that a bad faith showing is not required in either California courts or in the 9th Circuit); *Gerritsen v. Warner Bros. Entm't Inc.*, 116 F. Supp. 3d 1104, 1143 (C.D. Cal. 2015) (court noted as part of alter ego liability a finding of bad faith is required in the second prong of the test). The 9th Circuit has clarified that bad faith is required except with claims of the inequity arising out of under-capitalization or misrepresentation to creditors by the parent company. *Sentry Life Ins. Co. v. Roberts*, 925 F.2d 1470 (9th Cir. 1991). Because neither exception is alleged here, a claim of bad faith is required to establish alter ego liability.

9

1    and others. *Id.* ¶¶ 5-7. Plaintiff further alleges that Steinberg and his companies, acting through former CVW distributors, continued to use the CLEARVIEW MARKS and logos to mislead and deceive customers. *Id.* ¶¶ 22, 24. At this stage of the litigation, this is sufficient.

The Steinberg defendants also contend that alter ego liability is not adequately pled here because there "is no evidence of [Steinberg defendants'] fraudulent or deceptive intent, and Plaintiff does not allege[] fraudulent or deceptive intent." Mot. at 6. Defendants rely heavily on *Sonora Diamond* to support their contention that plaintiff must show *evidence* of defendants' wrongdoing to adequately plead alter ego liability. The Court finds that *Sonora Diamond* does not stand for this proposition. In *Sonora Diamond*, a school district sued a Canadian mining company and its subsidiary doing business in California for breach of contract. 83 Cal. App. 4th. at 523-30. The Canadian company, which was not a signatory of the contract, moved to quash service for lack of personal jurisdiction. *Id.* The court of appeal rejected the school district's argument that its allegations of alter ego liability automatically gave the trial court personal jurisdiction over the subsidiary. *Id.* at 538-40. Unlike here, however, the *Sonora Diamond* court was not considering whether the allegations in plaintiff's complaint were adequate to state a claim. *See id.* at 540 ("It is correct that a motion to quash for lack of personal jurisdiction does not implicate the merits of the complaint, but the plaintiff, in opposing the defendant's motion to quash, must present evidence to justify a finding that the requisite jurisdictional minimum contacts exist."). A plaintiff is not required to provide "evidence" merely to state a claim of alter ego liability.

While Steinberg defendants assert that "each entity and Mr. Steinberg are separate from one another," the Court takes the allegations in plaintiff's complaint as true for the purposes of the present motion. Opp'n at 6. The complaint alleges sufficient facts that, if taken as true, could plausibly establish the required elements alter ego liability. FAC ¶¶ 4-8; 29-36. Thus, the Court finds that plaintiff has adequately pled facts to support alter ego liability at this stage.[7]

---

[7] Steinberg defendants repeatedly refer to the FAC as an impermissible shotgun pleading because "plaintiff does not differentiate between any of the entities or Mr. Steinberg individually but alleges . . . that all Steinberg [d]efendants are alter egos of each other." Mot. at 4, 7, 21. Plaintiff argues that the FAC specifies as thoroughly as possible at this point. Opp'n at 14-15. The Court finds no merit to defendants' claim that plaintiff used impermissible shotgun pleading. "Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it

**B.      Failure to State a Claim**

Steinberg defendants also argue that plaintiff fails to plead facts sufficient to state a claim for all eleven causes of action. Mot. at 1.

**1.       Trademark Infringement & Unfair Competition Claims (Counts I-V)**

Plaintiffs assert several trademark and unfair competition claims under the Lanham Act, California common law, and California Business and Professions Code. "The Lanham Act is the federal trademark and unfair competition statute." *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 966 (9th Cir. 2016). "To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (internal quotation marks omitted). A plaintiff must also meet "a threshold 'use in commerce' requirement." *Id.* at 1203. Plaintiff's state law trademark infringement claim is "subject to the same legal standards as [its] Lanham Act trademark claim." *Id.* at 1221.

The parties dispute whether plaintiff sufficiently pled likelihood of consumer confusion. Steinberg defendants argue that the Court should dismiss Counts I-V against all Steinberg defendants primarily because plaintiff's allegations do not provide factual support for "what marks they were using that were confusingly similar to CVW marks, and/or how they were causing confusion." Mot. at 8; Reply at 5.[8] They argue that "transitioning customers from one brand to another with clear disclosure of the change" does not support consumer confusion. Reply at 6.

The Court finds plaintiff adequately alleges that Steinberg's use of CLEARVIEW MARKS was likely to confuse consumers. Plaintiff alleges that defendants caused confusion by redirecting Clearview branded websites to point to APOLLO websites without any explanation, and that "once

---

difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *SEC v. Bardman*, 216 F.Supp.3d 1041, 1051 (N.D. Cal. Oct. 27, 2016) (quoting *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010)). Here, plaintiff has alleged how the companies are connected and which specific defendants acted in which ways.

[8] Defendants point to no cases to support their position, beyond stating the elements of various claims.

11

on those websites, consumers saw references to CLEARVIEW MARKS and logos even though the sites only sold APOLLO products." *See* FAC ¶¶ 21-25. Plaintiff further alleges that Steinberg caused confusion by using CLEARVEW MARKS to contract with customers to install CLEARVIEW screens but then installed LA COSTA branded screens. *Id.* At this stage, this is sufficient.

### 2. Other Claims

Finally, Steinberg defendants also argue that plaintiff failed to adequately to allege breach of contract (Count VI)[9], breach of fiduciary duty (Count VII), fraud (Count VII), misappropriation of trade secrets (Count IX), breach of confidence (Count X), and interference with prospective economic relationships (Count XI). As discussed above, Steinberg defendants primarily raise factual disputes as to whether the various Steinberg defendants are in fact alter egos, whether Steinberg was in fact plaintiff's Director of Sales, and whether an agreement between Steinberg and CVW regarding the launch of Steinberg's motorized screens through CVW's network in fact existed. These factual disputes Steinberg defendants' raise cannot be resolved on a motion for judgment on the pleadings. Therefore, the Court finds Counts VI-XI can proceed against Steinberg defendants.

///

---

[9] For the first time in their reply brief, and then again at the hearing, Steinberg defendants argued that the agreement plaintiff alleged would "likely need to be in writing to be enforceable." Reply at 7; *see* CA Civil § 1624 ("An agreement that by its terms is not to be performed within a year from the making thereof" must be in writing to be enforceable). The Court finds the only case Steinberg defendants cite inapposite, and defendants misquote the Ninth Circuit's reasoning. *See Schick Service v. Jones*, 173 F.2d 969, 977 (9th Cir. 1949). Steinberg defendants acknowledge that the alleged 20% compensation agreement does not specify "details such as duration." Reply at 7, *see* FAC ¶¶ 14; 81-91. The complaint alleges that CVW and Steinberg split profits according to the agreement "[f]or over a year." *Id.* ¶ 14. However, courts interpret the one year requirement narrowly, and "the test under Section 1624 is not how long the parties performed under the agreement but whether the agreement could not have possibly been performed within a year." *Jeong Hae Lee v. Winix, Inc.*, 2006 WL 8434722, *6 (C.D. Cal. May 17, 2006); *see also Burgermeister Brewing Corp. v. Bowman*, 227 Cal.App.2d 274, 281(Ct. App. 1964); *Hopper v. Lennan & Mitchell*, 146 F.2d 364, 368 (9th Cir. 1944). Thus, at this point, the Court is not persuaded that the statute of frauds bars plaintiff's breach of contract claim.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby DENIES Steinberg defendants' motion for judgment on the pleadings in its entirety.

**IT IS SO ORDERED**.

Dated: January 9, 2026

SUSAN ILLSTON
United States District Judge

13